Good morning, Your Honors. Rob Robertson on behalf of the Plaintiff Joshua Young. May I proceed? Thank you very much, Your Honor. I represent Joshua Young, who spent over a year in the Cook County Detention Center after the defendant officers manufactured a statement that falsely showed that he had knowledge and control over a firearm that was recovered from the vehicle he was in, along with his lifelong friend Corey Hughes. Respectfully, the district court erred in applying the summary judgment standard in this matter, actually inverted it at times, took certain facts favorable to the defendants as gospel, and ignored other parts of the record entirely. There were three basic pillars to the district court's opinion, and I'd like to go through each one of them and point out where I believe the district court erred. The first one was the district court placed a great amount of emphasis on the fact that Joshua Young said that Corey Hughes had told him earlier in the day that there was a gun in the car. That fact... Mr. Robertson, just to jump ahead though for a minute, I try to break these down, you know, as the police become involved, and the initial stop of the white Chevy sedan seems to me to be a permissible traffic stop. They can see that the passenger in the rear seat isn't wearing a seat belt. And, you know, we see these sorts of things all the time, these sort of very minor traffic offenses, but it's a legitimate stop for that reason. And I think the second thing the district judge relied on is, however it came to be, by the time Young gets out of this car, the gun is on the console between the driver's side and the passenger's side in the front seat. And so it's not clear to me what all the rest of this discussion adds. I mean, that's already, I would suggest, although you can respond, probable cause to think that there's at a minimum joint possession between Young and the other individual, turns out to be Hughes, whom they know. And I'm not admiring what they did, supposedly crumpling up the first statement and getting rid of the exculpatory aspects of it, but probable cause doesn't require ruling out all exculpatory views. So why do we have to worry that much about what happens later? Right. I was always, my biggest concern with this case from its inception throughout was the simple fact that it would be reduced to, hey, there's a gun in the car and Joshua Young's in the car. And the simple fact- And it's right next to him. It's not like it's in the trunk or something. They see it right next to him. Right. But it was placed there moments before, seconds before, as the officers were approaching. Did they know that? That's the question of fact as to whether or not they knew that. Because they're approaching the car from the front. They're looking through a windshield, a clear windshield. They can see into the car. They're focused on the car. And that's what they admitted. Now, at this time where they're approaching, Joshua Young has testified that Corey Hughes has poked him in the back, right where the center council is, is wiping off the gun and is placing it on the center council. Whether they saw that or not, it's a question of fact. And if you look at their report- It's a good question because by the time the officers get there, the gun is there in the center council. And Young, no one disputes that Young was the driver. So, the gun is immediately proximate to him. And I'm just trying to figure out why that's not enough for probable cause. It's not enough for probable cause if the officers had actually seen it just being placed there, they would have known that Josh Young, you need both control and knowledge of the gun in order to have possession of the gun, whether it's joint or not. And those statements and those elements were missing. They were missing after the gun was recovered because they had a gun and they had two guys in the car and they couldn't necessarily prove that either one had knowledge or control either for themselves or for others. And if you look, and I know this is, the court has said, we don't need to look at matters after the fact, but matters after the fact are important. You look at the police reports these guys generated, what did they generate? Owner and possessor of the gun in their case report, Corey Hughes, not Corey Hughes and Joshua Young, not Joshua Young, Corey Hughes. In their, in the detective report that's initiated by others whom they reviewed, who do they put down as the possessor and owner of the gun? Corey Hughes, not Joshua Young, not Hughes and Young. In the inventory, who do they put down this gun is recovered from? Corey Hughes, owner of the gun, possessor of the gun, and it's recovered from Corey Hughes. That's what these officers placed in their reports. Robertson, can I, can I ask you a question, kind of picking up on what Judge Wood was saying, this issue of what the police could see and not see as they approach the car, the two P officers, Pavone and Perrano, is where you seem to join issue in your brief on behalf of your client, because your position, of course, is that Mr. Hughes had possession of the gun, was poking your client, and then was the one who placed it on the center council or around the center council, and that's how the officers could see it, or that's how the officers saw that, because they were approaching and looking in the car. What I'm wondering about is, when you look at the deposition testimony of the officers, both of the officers, they, as you accurately describe, they say they were approaching the car and they could see inside, but if memory serves, and you can correct me if I'm mistaken, they don't say that they saw any movement at all, and so my question is, can Mr. Young create a genuine issue of fact requiring resolution by trial by himself testifying as to what two other people saw? Well, it's not, respectfully, it's not what two other people saw, but what they could have seen. Okay, that's fair. What they could have seen. Can he do that? Sure, I think, and I understand the court's skepticism, but the simple fact of the matter, if you look at it in the reverse, what you'd have is officers could eliminate any summary judgment by just simply saying, I didn't see it. There are a number of examples in this case where an officer just simply denied, I was never told that, I didn't see that, and if you follow along, it's like a pattern of summary judgment. What they've effectively done is created their own secondary narrative of the case, in which, in many cases, the district court simply adopted, rather than by looking at the reasonable inferences that are potentially present, which go to us as the plaintiff. The case we relied on, I know it's not a perfect analogy, is that Miller case, where the officer jumps over the fence, lands on the individual's jaw, and he says, hey, I didn't see the guy, and then the court, the Seventh Circuit there, looked at the fact that, well, based on the circumstances at what could have been seen, there was a question of fact as to whether or not the officer actually saw the individual when he jumped over the fence and landed on his jaw. So, it's not a question of the plaintiff seeking to create an idea of what the officer saw, but just simply showing the circumstances. And again, I think it's so important to look at everything that occurred, and it goes back to what Judge Wood, I know Judge Wood said, she wasn't pleased or was, I forget what the word was, with what the officers did, in terms of destroying the statement and destroying the video. But doesn't that show that they knew they lacked a probable cause? Doesn't it show that they knew they needed something? That they excised from the statement the very elements of knowledge and control that shows that Joshua Young didn't need those? That's what they did. Well, I understand that that's what you would like to do, that there's a version of the I'm turning around right now and going home. I don't want this guy in the car. He knows he's not entitled, presumably. And Hughes says, never mind, I'll just leave it at the barbershop. And as far as Young knows, that's where it got left until he's literally physically being poked. And those facts are all there in the crumpled up and thrown away statement. And I have some sympathy for that, but what I am stuck on is the fact that we're not trying to prove things here. We're just trying to see would an objectively reasonable police officer approaching a lawfully stopped car who sees this gun where he sees it have any reason at that point. You're running up into this problem that the police don't have to develop exculpatory evidence. And actually, I'll add one more fact that you might want to comment on, which was that I gather the first time they contacted the state's attorney, they said, we don't want to move forward until we get written statements. And that's what causes these written statements to be prepared as they are. Well, I think that there's a difference. It's not a simple probable cause situation where the state's attorney has to investigate. What we're saying is this is an instance where the officers cannot go, cannot ignore where the facts reasonably lead them and cannot go and simply close their eyes to the facts that don't fit within their version of events. And was there any, was there any dispute that there was a gun on the console? No. There was not, Judge. There was not. Isn't that sufficient? That's a separate issue. They come up and there's a gun on the counsel and they get in the driver's seat, the man in the driver's seat's right next to him by his hand. You know, and how do you, how do you avoid that? Well, what I'm trying, how I'm trying to get that is to get the court to look at the whole picture here. And that's just simply the facts that the officers were to rely upon. If the, if it was that simple, then the officers wouldn't need to have crumpled up the statements, wouldn't have needed to somehow distinguish between Young and Hughes in their attempt to try and show knowledge and control of that gun. They needed something from the state's attorney. The state's attorney basically told them go get statements because they didn't have enough. The fact that you have two guys in a car with a gun isn't enough to prove possession. You need to prove knowledge. You need to prove control. And there is a question as to whether or not the officers saw this initially, even if they didn't see it initially, when they find it in the council between the two guys and they go to the state's attorney, they know at that point, their investigation is still going on. They're still trying to figure what's going on. They still don't have probable cause once they get into it and they start taking the statement and then they start crumpling up the statements and destroying videotape recorded statements. That's when we have a situation where there's a question of fact, I realize, and I realize all three of the panel have expressed and allowed me an opportunity to meet the skepticism as to how this sit, what deserves a trial. But in, in looking at the case as it's supposed to be looked at in the light, most favorable to the plaintiff. I know you guys hear this all the time with every reasonable inference given to the plaintiff, looking at it like that, you have a situation where the officers could have seen the activity by Corey Hughes could have seen him. I mean, defendant Warner admitted, admitted that, that he believed the gun was Corey Hughes and he believed Hughes was in possession of the gun. I mean, what more, what more do you, do you need than that? You know, you hear, you have the district court here relying on not only the positioning of the gun, but the fact that Hughes, a co-offender with every reason to get rid of the gun, the district court's relying on that in support of, of its decision. I mean, let's face it. He had every reason not to, every reason to move that gun to Joshua Young. And there were statements. And again, I don't, and maybe this is getting into the weeds, but I don't think it is. There are so many inconsistencies about who was present when that statement was taken, what was said, where that statement was taken. All those things show that there's more here going on. It's not just simply as much as the facts can be reduced to what the officers want them to be reduced to a simple gun in the car. The rest of the facts of this case show so much more is happening. And it really, the plaintiff should be given an opportunity to present that case to the District Court.   I appreciate the time. I appreciate the court's time. I see my, my time is coming up. I'd save anything I have left for a bottle. Thank you very much. Thank you, counsel. Mr. Hendricks. Your sound is, I can't hear you. Thank you. Sorry. May it please the court. Mr. Young says that his version of events was that Hughes was holding the gun in the back seat and that the officers saw this as they looked through the car's front windshield when they walked to the car. But there is no evidence supporting that version of events. The only evidence on this point is the officer's testimony that they did not see Hughes holding the gun. So Mr. Enriquez, couldn't you tell, I mean, from the fact that the windshield is not a tinted windshield or anything. I mean, the car is of a certain type. It's a, you know, it's a Chevy sedan. I mean, things that happen that involve somebody stretching from the back seat toward the front console are capable of being observed. You can, you can see people moving around inside cars, and I've seen many police officer testify that, oh, I saw somebody tuck something under the seat, or I saw somebody do this, or, I mean, it's not unreasonable just given the design of the car that this was observable. Well, it is pure speculation, though, on behalf, on the part of Mr. Young, that the officers saw this. They testified that they did not. He couldn't tell, he couldn't say that the officers saw it. You could only tell that someone else saw something. But that gets perilously close to a subjective standard. You know, objectively speaking, was it capable of being seen? I mean, we don't want officers to take an ostrich approach to these things either. No, we don't, but the officers said I didn't see it, which means that either it didn't happen at all, or it happened, but they didn't see it. Mr. Young has no basis. I'm sorry. No, please finish your thought. I'm sorry. Mr. Young has no basis to say otherwise. He, but let me mention, let me jump ahead for a second, then come back to this. It wouldn't matter anyway, because even if Mr. Hughes had been holding the gun and the officers saw it, that was only a few minutes, and there's no indication that he, that the officers had every reason to believe that in those few, excuse me, that was only for a very few seconds. There was no indication that the officers didn't, couldn't believe that the, that Hughes had, that they both had access to the gun in the few seconds before Hughes was holding it, and both, and after, in those few seconds afterwards. In other words, there was only a very brief few seconds in which they might have seen him holding the gun if he, in fact, was holding the gun, and they had no reason to believe what was going, that, that he actually was holding it before, and, and, and again, or again afterwards, and for that reason, the officers could have believed that they had joint possession of the gun during all the time, except for perhaps those, those few seconds, so it wouldn't, it wouldn't matter in any of, in, in, in any event, but, you know, can I tell you what troubles me about the case, and you can respond, tell me I'm mistaken. I think Mr. Robertson makes a pretty good point about the potential consequence of the case, and I think that if that version of events were proven true, okay, and we have to accept his allegations, do we not, at this stage, as being true, that they, that they wadded up the first statement, said it's not good enough, we're doing a second statement, okay, we have to accept that. If we accept that as true, doesn't it seem highly likely to you that a fact finder would have grave concerns about the credibility of the entire account that the police officers are offering? In other words, this is an odd case where you say, we're going to go ahead and accept as true an allegation of very serious police misconduct, and we're going to find it harmless because of the, because of the location of the gun. Well, what we're doing with that, in my view, that concerns me, is we're taking officer credibility out of all of it and just setting it to the side. The standard, though, is what an objectively reasonable officer would have believed. So, let's go all the way and say that these officers might have believed they didn't have probable cause so that they had, as Mr. Robertson suggests, they had to, to fabricate some evidence in this case or, or dispose of some evidence in this case. The standard is not what these officers believe. The standard is what reasonable officers would believe in the circumstances. And reasonable officers in the circumstances would have believed they had probable cause. But you have to assume that those hypothetical, those hypothetical reasonable officers are the same ones that destroyed the evidence. Well, but that's true. But whatever they believed about probable cause is irrelevant to the issue of probable cause because the, it's not a subjective standard. It's what reasonable officers would believe based on what these officers saw. And as I've mentioned, the, and Judge Wood pointed out, the officers found the gun on the console within easy access of both men so that at the very least there would, there would have been joint possession under any circumstances. And there's no, that is, that fact is not disputed. That was my point early on. We have it clear that there was a gun on the console and they could see and that was it, right? That's correct. Undisputed. That's correct. So Mr. Enriquez, is it your position then that even if the gun had been on the console for one second before the officers walked up, that is enough to show knowledge that the gun was in the car and joint possession? Because actually, as I understand it, what, what Mr. Young is trying to argue is that, in fact, he didn't have knowledge that the gun was in the car. And so even if, even if it was out there for a split second, that itself is not enough to satisfy the criteria in the statute and the, you know, to build up the probable cause that they needed. It doesn't matter what Mr. Young thought or said or anything. Well, let me rephrase then. I am saying in a situation in which a gun for one second is in the view of a hypothetical individual in a car, is that automatically enough to say that any reasonable person would think that that individual has knowledge that the gun is in the car and is able to control the gun? You know, it seems to me like gun in car, case over, is your position. No, the, I'm resisting the hypothetical for the following reason. The officers had no way of knowing where the gun was before they opened the door, had Mr. Young get out of it and found the gun on the console. But they would have had knowledge if they had taken the first statement and just let Judge O'Donnell evaluate the entire record instead of just a meticulously pruned record. I didn't follow the... Well, I mean, he says in the first statement all of, he says that he says in the first statement, which I guess we don't have, but he says that he didn't know the gun was there and he thought that Hughes had gotten rid of the gun and it's only literally as the police officers are walking up to the car that the gun was there. No, that is correct. But obviously the judge ends up ruling in this case that he couldn't tell which of the two men had knowing possession of the gun at all or even whether they had joint possession of the gun. That only means that's the beyond, he found that there was not evidence beyond a reasonable doubt to convict, but that doesn't nearly satisfy the standard of probable cause. The question about this case begins, does begin and end with what the reasonable officers would believe when they found the gun on the console that was within easy reach of both men. How do you think most trial court judges would react to police, to it being proven that police officers tore up a first statement, threw it away, said it's not good enough, we're not leaving the room until the statement improves? Don't you think that would have a very substantial spillover on the law enforcement view of the at all the existence of probable cause? Because officers can make lots of mistakes. The critical question is what reasonable officers, not these officers, would have believed when they found the gun on the central console of the car within that easy reach of both men. Your position would have to be the same on a hypothetical fact pattern where on the way back to the station house after a Terry stop that's being challenged, one officer says to another, the body camera video is a problem, throw it in the river. It's thrown in the river, they get back to the police station, they lodge an account, the Terry stop's upheld, and we say, well, you know, the objective facts as they reported them, they're objective that the Terry stop's good to go. Well, obviously, they pay no attention to the fact that they threw the camera, the video in the river. Obviously, the body cam video would be problematic because unlike evidence of the testimony of people, body cam videos get, the cases have indicated that they have, they get special credit. Well, hold on. I mean, Mr. Young, Mr. Young's account here is that in the first statement, he said, I never had a gun. I didn't see a gun. I understand that, but the officers didn't have to believe him. After all, both men were pointing at each other, accusing the other of having possession of the gun, and it's simply not the obligation of the officers to make that judgment call, which of them had the gun and which didn't. That's what the Spiegel case says. It says that, that office, there's probable cause in such a circumstance, and you leave it to the, to the, you leave it to, in the criminal case, you leave it to the jury to determine which, who was telling the truth. And that's what the officers did. They, they determined that there was probable cause. They obtained approval to, for the charges. And, and that was that the officers were, were obligated to do. They didn't have to believe anything. And getting that statement, getting that statement was important as a matter of fact to having the charge approved, correct? No, that's not true. That's not in the record. It is true that the assistant state's attorney asked the officer Warner to get a statement. There was no indication in the record that, that the, that the assistant state's attorney wouldn't approve the charges after absence such a statement, absent such a written statement. And it would, and certainly it's good, it would be good practice for the state's attorney to have a written statement to, to enhance the prosecution in the case. But there is no evidence in the record that the charges would not have been approved without the written statements. We know, we know he said, or she said, get a statement. They got a statement. The charges were approved. That, that is certainly true. There's no doubt about it, but the what for is just not there. And the, the Mr. Robertson asserted also that, that officer Warner admitted that the gun was Corey Hughes's. That's not true at all. The testimony in the case was that the, the computer documentation in which Corey Hughes was listed as the owner of the gun did not, that the software did not allow one to put in more than one person as the owner of the gun. And he testified they could have just as easily chosen Mr. Young as the owner as Mr. Hughes. But interestingly, not only did they never do that across numerous forms, but they didn't even try to use any other comment field or anything in the form, maybe not after the line owner, you know, to indicate a hint that there was a joint possessor. The, the, there's no testimony in the record that the officers chose to put Mr. Hughes's name as the owner of the gun for any reason other than they were limited in the number of people that they could, that, that they could put as the owner of the gun. And, but beyond that. I'm looking at the form though, there's, there's plenty of room if they had wanted to alert a reader to the fact that this might be a joint possession case to, to put that fact in there. There's a great big section for the facts for probable cause in one of them, the arrest report. I mean, there, this can't be a computer forbidding you from getting it in there problem. Well, there's, the owner of the gun, it doesn't matter really. And it's who possesses the gun regardless of who the owner is. Hughes absolutely testified that it was the gang's gun. So it wasn't the only, no individual person owned the gun. That is unrefuted. Mr. Young does not testify that it wasn't the gang's gun. The, so I say that my time is out. We have not gotten to the other issue in the case at all. Counselor, I'll give you another minute to finish your case. The, with respect to the due process claim, that is the putative due process claim in the case, the district court correctly granted summary judgment on that claim because the only relief Mr. Young sought on it was for what he alleged was his unlawful detention while awaiting his criminal trial. And under governing case law, a claim seeking that relief is cognizable only under the fourth amendment and not under the due process clause. In Manuel 2, Lewis and Cam, this court properly interpreted Manuel 1 to hold not only that unlawful pretrial detention claims are cognizable under the fourth amendment, but also that they are not cognizable under the due process clause. Those cases have read Manuel 1 correctly. We ask that the court affirm the judgment. Thank you, counsel. Mr. Robinson, I'll give you another minute. You only have, go ahead. Can't hear you. Can't hear you. Thank you very much. The, I just want to hit a couple points Mr. Enriquez made, following up on Judge Scudder's point as to whether or not there was evidence that they knew, the defendants knew that the statement was important. Officer Warner, and it's in our, it's in docket 63, page 27, where it's established in there that the defendants wanted both Young and Hughes charged with the same gun and didn't want either one of them to get off scot-free, that they knew that the elements included knowledge and control, that they knew that Young's statement would be used in a criminal proceeding against him. And Warner admitted, defendant Warner, who was the primary guy who directed the statement, admitted that he knew the statement given by Young was big in the case and it was kind of a large factor in the state's attorney's decision to approve charges. So he admitted that straight on. I see that my time is up. I'd be more than willing to take any questions or thank the court for its time. Thank you, Mr. Robinson. Thanks to both counsel and the case will be taken under advice.